## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| K&S INVESTMENT PROPERTY GROUP, LLC, | |
| Plaintiff, | Case No. 20-cv-02426 |
| v. | |
| WESTFIELD INSURANCE COMPANY, | Judge John Robert Blakey |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

After a fire destroyed Plaintiff K&S Investment Property Group LLC's building in Chicago, Plaintiff submitted a claim to its insurer, Defendant Westfield Insurance Company, to recover business income and rental value losses. Defendant ultimately rejected Plaintiff's business income loss claim based upon Plaintiff's alleged failure to cooperate during Defendant's investigation of the claim, and Plaintiff filed this coverage suit in turn. Defendant now moves for summary judgment [10], arguing that Plaintiff's failure to cooperate forecloses its entitlement to coverage. For the reasons explained below, this Court denies Defendant's motion.

## I.     Background

### A.     Facts[1]

On December 23, 2018 a terrible fire broke out at Plaintiff's property located at 2235 W. 74th Street in Chicago, resulting in the total loss of the building and its

---

[1] This Court takes these facts from Defendant's statement of facts [12], Plaintiff's statement of additional facts [18], and Defendant's response to Plaintiff's statement of additional facts [23].

contents. [18] at ¶ 1. At the time of the fire, Plaintiff maintained a single tenant in the property, IIK Transport. *Id.* at ¶ 2.

From November 12, 2018 through November 12, 2019, Defendant insured the property via policy CWP-7928998. [12] at ¶ 1; [13-1] at 15. The policy covered, among things, business income and rental value losses. [18] at ¶ 3. The policy also contained the following provision:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

C. Loss Conditions
The following conditions apply in addition to the Common Policy
Conditions and the Commercial Property Conditions.

***
2. Duties In The Event Of Loss
a. You must see that the following are done in the event of loss:

***
    (5) As often as may be reasonably required, permit us to inspect
    the property proving the loss or damage and examine your books
    and records . . . and permit us to make copies from your books and
    records.

***
    (7) Cooperate with us in the investigation or settlement of the
    claim.

b. We may examine any insured under oath, while not in the presence
of any other insured and at such times as may be reasonably required,
about any matter relating to this insurance or the claim, including an
insured's books and records. In the event of an examination, an insured's
answers must be signed.

[12] at ¶ 3; [13-1] at 44. The policy also provides that "No one may bring a legal action against [Defendant] . . . unless . . . [t]here has been full compliance with all the terms of this Coverage Part." [12] at ¶ 15.

2

Defendant received notice of Plaintiff's claim the day after the fire. [18] at ¶ 4; [23] at ¶ 4. A few days later, on December 27, 2018, Defendant's claims adjuster met with Plaintiff's owner, Ivan Kazniyenko, at the loss site. [18] at ¶ 6. From that date on, the parties continued to communicate about the claim, and Plaintiff produced a variety of documents in response to Defendant's requests, including a copy of the lease agreement between Plaintiff and IIK, IIK's corporate formation documents, tax returns, and other financial documents. *Id.* at ¶¶ 8–10.

In April 2019, without providing any advance notice to Plaintiff, Defendant sent an investigator to Sutton Transportation, the company leasing space to Plaintiff while Plaintiff's property was being repaired. *Id.* at ¶ 14. George Stetsiuk, one of Plaintiff's employees, then complained that the investigator's visit caused problems for Plaintiff and its tenant, IIK. *Id.* at ¶ 15. Thereafter, Defendant's investigator appointed counsel to investigate the claim and demanded an examination under oath (EUO) of Kazniyenko. *Id.* at ¶ 16. In July 2019, Kazniyenko appeared with counsel for his EUO. *Id.* at ¶ 17; [12] at ¶ 4.

At the EUO, Kazniyenko testified that Plaintiff sought reimbursement for its rental payments for the Sutton facility. [13-2] at 21. To that end, Kazniyenko testified about the amounts of various rental payments Plaintiff made to Sutton. *Id.* at 20. When Defendant's counsel asked why K&S, and not IIK, was making the rental payments to Sutton, Kazniyenko refused to answer on advice of counsel. *Id.* at 20–21. And when asked whether Plaintiff continued to make payments to Sutton after March 2019, Kazniyenko again refused to answer the question on advice of counsel.

3

*Id.* at 23.

At the EUO, Defendant also questioned Kazniyenko about a second commercial property lease Plaintiff executed after the December 2018 fire with a landlord named 9901 Derby Lane LLC. [12] at ¶ 9; [13-2] at 23. Kazniyenko, again under advice of counsel, refused to answer all questions about this lease. [13-2] at 23.

Around September 2019, Plaintiff received a letter from Defendant denying Plaintiff's claim for business income loss based solely upon Plaintiff's alleged failure to cooperate. [18] at ¶ 26. Hoping to change Defendant's mind, in February 2020, Plaintiff (through new counsel) sent Defendant additional documentary evidence supporting its business income loss claim and offered to make Kazniyenko and Stetsiuk available for another EUO. *Id.* at ¶ 27. But Defendant rejected this offer, stating that its position remained unchanged. *Id.* at ¶ 28.

## B. Procedural History

On March 19, 2020, Plaintiff filed a complaint against Defendant in state court, and Defendant removed the case to this Court on April 20, 2020. [1]. The complaint seeks a declaratory judgment (Count I) that Defendant must provide coverage on Plaintiff's business income losses, including the net income losses associated with renting alternative accommodations pursuant to its lease with IIK. [1-1] at ¶¶ 13–19. Plaintiff also asserts claims for breach of contract (Count II), *id.* at ¶¶ 20–26, and "vexatious and unreasonable action or delay" (Count III), *id.* at ¶¶ 27–31.

In lieu of answering the complaint, Defendant moved for summary judgment.

[10].  While unusual, courts may consider and rule upon such motions before the defendant files an answer.  *Greene v. CCDN, LLC*, 853 F. Supp. 2d 739, 744 (N.D. Ill. 2011).  This Court therefore considers the merits of Defendant's motion below.

## II.  Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party.  *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020).  The non-moving party bears the burden of identifying the evidence creating an issue of fact.  *LeDure v. Union Pac. R.R. Co.*, 962 F.3d 907, 910 (7th Cir. 2020).  To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019).  Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on

which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III.  Analysis

Moving for summary judgment, Defendant argues that Plaintiff's failure to cooperate during the investigation bars its recovery on its complaint. [10]; [11] at 3–6. In so doing, Defendant invokes the plain language of the policy requiring Plaintiff to cooperate with Defendant's investigation of its claim and barring Plaintiff from initiating suit for failing to cooperate. *See* [12] at ¶¶ 3, 15.

Under Illinois law, which the parties agree applies here, any "condition in the policy requiring cooperation on the part of the insured is one of great importance . . . and its purpose should be observed." *Am. Access Cas. Co. v. Alassouli*, 31 N.E.3d 803, 808 (Ill. App. Ct. 2015) (quoting *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991)). The duty to cooperate recognizes that insurers ordinarily possess little to no knowledge of the facts surrounding a claim, and thus, depend upon their insureds for "fair and complete disclosure." *Piser v. State Farm Mut. Auto. Ins. Co.*, 938 N.E.2d 640, 647 (Ill. App. Ct. 2010). To avoid coverage under the policy based upon an insured's alleged failure to cooperate, the insurer must show that: (1) the insured breached the duty to cooperate; and (2) the insurer was "substantially prejudiced" by that failure. *Xtreme Prot. Servs., LLC v. Steadfast Ins. Co.*, 143 N.E.3d 128, 138 (Ill. App. Ct. 2019).

Illinois courts acknowledge that, in some circumstances, an insured's refusal to cooperate might support a finding of summary judgment for the insurer in an

insured's claim for proceeds under a fire insurance policy. *Crowell v. State Farm Fire & Cas. Co.*, 631 N.E.2d 418, 420 (Ill. App. Ct. 1994). But generally, whether an insured has breached a cooperation clause is a question of fact. *Piser*, 938 N.E.2d at 649. Thus, courts reserve granting summary judgment based upon an insured's breach of a cooperation clause for only "the most extreme of cases." *Hartshorn v. State Farm Ins. Co.*, 838 N.E.2d 211, 214 (Ill. App. Ct. 2005) (quoting *Piro v. Pekin Ins. Co.*, 514 N.E.2d 1231, 1234 (Ill. App. Ct. 1987)). Courts also deny summary judgment where the insured agrees to cooperate further by producing documents or submitting to a deposition *after* the insurer files its motion for summary judgment. *Id.* at 215; *Crowell*, 631 N.E.2d at 421 (reversing grant of summary judgment to insurer where the trial court failed to allow the insured to "cure his noncompliance" with his duty to cooperate before entry of summary judgment).

Defendant's motion fails under these standards. This case does not qualify as extreme. In *Hartshorn*, the Illinois appellate court affirmed summary judgment in favor of the insurer based upon an insured's failure to cooperate; the insured produced no documents aside from a police report, failed three times to appear for an oral examination, and made no effort to cooperate even after the insurer moved for summary judgment. 838 N.E.2d at 215. Similarly, in *Piser*, the appellate court affirmed judgment for the insurer because the insured failed to cooperate; the insured failed to sign a financial authorization allowing the insurer to check his credit, failed to submit to an EUO, and failed to provide any financial documentation whatsoever. 938 N.E.2d at 649.

In contrast, Plaintiff here diligently responded to Defendant's document requests. [18] at ¶¶ 8–10, 26. Defendant emphasizes Kazniyenko's EUO, arguing that his refusal to answer certain questions demonstrates Plaintiff's failure to cooperate. [22] at 2. But, although the parties disagree as to whether Kazniyenko was sufficiently forthcoming during his EUO, they do agree that he showed up for his EUO. And this Court's own review of Kazniyenko's EUO transcript reveals that Kazniyenko was far from evasive. He answered most of Defendant's questions and only refused to answer certain questions under (somewhat questionable) advice of counsel. Finally, perhaps recognizing that prior counsel may have hampered Kazniyenko's ability to fully cooperate during the EUO, Plaintiff, through new counsel, has offered to present Kazniyenko for another EUO. *Id.* at ¶ 27. This record precludes summary judgment in Defendant's favor.

## IV. Conclusion

For the reasons set forth above, this Court denies Defendant's motion for summary judgment [10]. Defendant is ordered to answer the complaint by 2/15/21. In addition, the parties shall file a status report by 2/26/21, proposing reasonable case management dates. If the parties are interested in a settlement conference with the Magistrate Judge, they should so advise this Court, and this Court will enter an expedited referral order.

Dated: January 15, 2021

Entered:

John Robert Blakey
United States District Judge